KENNARD, J., Concurring.
—I join the majority in affirming the judgment of death. I write separately, however, to address the merits of defendant’s claim that the prosecutor committed misconduct at the penalty phase by using biblical quotations in his closing statement to the jury, a subject the majority does not address because it concludes that defendant forfeited the claim by failing to object.
I
During closing argument at the penalty phase of defendant’s capital trial, the prosecutor showed the jury a large chart entitled “The Bible Sanctions Capital Punishment.” The chart contained these four quotations from the Bible: (1) “Who sheds the blood of man by man shall his blood be shed, for in his image did God make man”; (2) “He that smiteth a man so that he die, shall be surely put to death”; (3) “And if he strike him w[ith] an instrument of iron so that he die, he is a murderer: The murderer shall surely be put to death”; and (4) “And you shall not take reparations for the soul of a murderer who deserves to die but he shall be put to death.”
In his initial argument to the jury,[1] the prosecutor said: “[W]hen we talk about religion, it is not something that is to be used in aggravation at all, what the Bible or the Koran or anything has to say, but the one thing that is universal throughout all religions is this idea that murderers are to be punished, and that the death penalty is sanctioned and that it is appropriate. And just so there isn’t anybody who lies awake at night saying ... is it permissible under my religion to do this sort of thing? . . . [T]hat was something we hoped you thought of beforehand. And there is a question to that effect in various forms that asks you about your religious beliefs: Is that going to stand in the way? FH] Well, many times people get to this point, and they start thinking about that.... [T]he Bible does, in fact, sanction capital punishment. There is one that is just so right on point: [f] ‘He who strikes him with an instrument of iron so that he die, he is a murderer, and the murderer will surely be put to death. And you shall take no reparations for the soul of a murderer who deserves to die, but he shall be put to death. [¶] *1077 He who sheds the blood of man by man, shall his blood be shed. For in his image did God make man. His blood or his life will be shed by man.’ [f] Now, as I said, religion is not supposed to be the guiding factor in finding aggravation, but I just want to clear the air there that religion does not stand in the way, and that’s not supposed to enter into your evaluation.” (Italics added.)
Defense counsel then argued to the jury that, contrary to the prosecutor’s claim that all religions permit punishment by death, Buddhism does not. Also, defense counsel said, under ancient Jewish law such punishment was almost never imposed—once every 30 years according to one scholar quoted in the Talmud; once every 160 years according to another. He then quoted from the New Testament: “Vengeance is mine, said the Lord.”
The prosecutor began his final statement to the jury with these words: “[T]his process that we go through here [is] a lot different than it was in the Old Testament. The Old Testament, when God spoke, he made it very clear. Very clear. Murderers shall die. And God also made it very clear that it was man who was going to impose that penalty. [][]... Paul makes it very clear, ‘the ruler bears not the sword in vein [sic\ vain] for he is the minister in God, a revenger to execute wrath upon him that do with [sic: doeth] evil.’ [][]... God made it clear, [but] when man gets into the act he starts softening up the rules a little bit and that’s okay.” (Italics added.)
In a final statement, defense counsel told the jury: “God did not sentence Cain to death for killing his brother. He banished him.” Counsel also noted that “the major religious groups in this country . . . have taken rigorous stands against the death penalty.”
II
As this court has said, in a capital case the prosecution may not rely on biblical authority in urging the jury to return a verdict of death, as this would “create and encourage an intolerable risk that the jury will abandon logic and reason and instead condemn an offender for reasons having no place in our judicial system.” (People v. Roldan (2005) 35 Cal.4th 646,743 [27 Cal.Rptr.3d 360, 110 P.3d 289]; see People v. Williams (2010) 49 Cal.4th 405, 465 [111 Cal.Rptr.3d 589, 233 P.3d 1000] (Williams).) Federal courts too have said this. (See Romine v. Head (11th Cir. 2001) 253 F.3d 1349, 1358 [prosecutor committed reversible error by arguing “Biblical law to the jury as a basis for urging it to . . . sentence [the defendant] to death”]; Sandoval v. Calderon (9th Cir. 2000) 241 F.3d 765, 111 [“[R]eligious arguments have been condemned by virtually every federal and state court to consider their challenge. [Citations.]”]; Bennett v. Angelone (4th Cir. 1996) 92 F.3d 1336, 1346 [“Federal *1078 and state courts have universally condemned . . . religiously charged arguments as confusing, unnecessary, and inflammatory.”].) As one federal appellate court has explained, “[biblical] statements, worthy of the profoundest respect in proper contexts, have no place in our non-ecclesiastical courts and may not be tolerated there.” (Ibid.)
Here, as discussed in part I, ante, the prosecutor showed the jury a large chart bearing the heading “The Bible Sanctions Capital Punishment,” and containing four biblical passages requiring death for murderers; and the prosecutor told the jury that God “made it very clear” that “[m]urderers shall die.” The majority does not decide whether the prosecutor’s religion-based argument was proper. Instead, it concludes that defendant forfeited his claim of error by failing to object at trial, and that even if the prosecutor committed misconduct no prejudice resulted. (Maj. opn., ante, at pp. 1049, 1052-1053.) In my view, the prosecution’s reliance on religious authority went beyond the parameters of permissible argument.
Pertinent here is this court’s decision in Williams, supra, 49 Cal.4th 405. In that capital case, the prosecutor at the penalty phase quoted several statements from the Bible that, in the prosecutor’s words, “ ‘unambiguously command[] that murderers be put to death.’ ” (Id. at p. 465.) Therefore, the prosecutor argued, “even the Bible for those of you who may have some religious scruples does not say that you should not use your own moral beliefs in making [the] determination here.” (Ibid.) This court in Williams held that the prosecutor’s argument was improper, explaining: “Although . . . the prosecutor framed her religious comments as an ostensible exhortation for jurors to refrain from deciding against the death penalty based upon religious views” by telling jurors not to have “religious scruples” about imposing the death penalty, “the content of her remarks emphatically communicated that the Bible supports imposition of the death penalty. She ‘urged that the Bible not only permits such action, but demands it.’ [Citation.] Similarly framed arguments have been held improper. [Citations.]” (Id. at p. 466.)
Like the prosecutor in Williams, supra, 49 Cal.4th 405, the prosecutor here tried, put colloquially, to have it both ways. He correctly explained to the jury that “religion . . . [is] not supposed to enter into your evaluation.” But he also repeatedly reminded the jury that the Bible required that murderers be put to death. For instance, in his initial statement to the jury, the prosecutor described as “just so right on point” the biblical statement (one of several shown to the jury), that “ ‘[h]e who strikes him with an instrument of iron so that he die [(here the victim was killed with a knife)], he is a murderer, and the murderer will surely be put to death.’ ” Then, in his final statement to the jury, the prosecutor said: “[W]hen God spoke, he made it very clear. Very clear. Murderers shall die.”
*1079 As in Williams, here the prosecutor’s reliance on religious authority “emphatically communicated that the Bible supports imposition of the death penalty” (Williams, supra, 49 Cal.4th at p. 466), and “strayed beyond the bounds of permissible argument based upon religion” (ibid.).

III

As I noted at the outset (see ante, p. 1076), the majority declines to decide whether the prosecutor committed misconduct by relying on religious authority in his penalty phase arguments. Instead, it concludes that, by failing to object to the prosecutor’s argument at trial, defendant has forfeited his right to challenge it in this appeal. As explained below, I reluctantly agree.
In concurring and dissenting opinions in three previous capital cases, I concluded that, notwithstanding the defense attorney’s failure to object, the prosecutor’s improper penalty phase reliance on religious authority for imposition of the death penalty required reversal of the judgment of death, as defense counsel’s failure to object to the prosecutor’s religion-based argument resulted in a denial of the defendant’s right to effective representation. (See People v. Zambrano (2007) 41 Cal.4th 1082, 1202-1203 [63 Cal.Rptr.3d 297, 163 P.3d 4] (cone. & dis. opn. of Kennard, J.); People v. Slaughter (2002) 27 Cal.4th 1187, 1225-1229 [120 Cal.Rptr.2d 477, 47 P.3d 262] (cone. & dis. opn. of Kennard, J.); People v. Wash (1993) 6 Cal.4th 215, 279-283 [24 Cal.Rptr.2d 421, 861 P.2d 1107] (cone. & dis. opn. of Kennard, J.).)
It may well be that here defense counsel decided not to object to the prosecutor’s religion-based argument favoring death for murderers so the defense could in turn cite religious authority expressing a contrary view. But as I have said in the past: “ ‘A religious argument against the death penalty is no more acceptable at the penalty phase of a capital case than a religious argument in favor of the death penalty. ... It follows that defense counsel’s decision to respond to the prosecutor’s religious argument by relying on opposing religious authority cannot be considered a legitimate tactical choice that would excuse his failure to object to the prosecutor’s impermissible religious argument.’ ” (People v. Zambrano, supra, 41 Cal.4th at p. 1203 (cone. & dis. opn. of Kennard, J.), quoting People v. Wash, supra, 6 Cal.4th at p. 283 (cone. & dis. opn. of Kennard, J.); see People v. Slaughter, supra, 27 Cal.4th at p. 1227 (cone. & dis. opn. of Kennard, J.).)
That view, however, has not been embraced by this court. (People v. Slaughter, supra, 27 Cal.4th at p. 1210; see People v. Riel (2000) 22 Cal.4th 1153, 1212-1213 [96 Cal.Rptr.2d 1, 998 P.2d 969]; People v. Welch (1999) 20 Cal.4th 701, 764 [85 Cal.Rptr.2d 203, 976 P.2d 754].) Also, here defendant does not argue on this appeal that his counsel’s failure to object to the *1080 prosecutor’s religion-based argument constituted ineffective representation, perhaps because he plans to raise that argument in a petition seeking habeas corpus relief. (See People v. Mendoza Tello (1997) 15 Cal.4th 264, 266-267 [62 Cal.Rptr.2d 437, 933 P.2d 1134] [“A claim of ineffective assistance ... is more appropriately decided in a habeas corpus proceeding.”].) For these reasons, on this appeal I agree with the majority that defendant’s attack on the prosecutor’s religion-based closing statement should be rejected on the ground of forfeiture.[2]

 The trial court allowed both the prosecution and the defense two penalty phase arguments.

 The majority also concludes that even if the prosecutor’s use of biblical quotations in closing argument was improper, the misconduct did not prejudice defendant. (Maj. opn., ante, at pp. 1051-1053.) Because defendant forfeited his right to raise the issue, I see no need to decide whether the prosecutor’s misconduct would require reversal of the judgment of death.